E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

| **Presiding: The Honorable** | **GEORGE H. KING, U. S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     **(In Chambers)** Order re: Defendants' Motions for Summary Judgment

     Plaintiff Harry A. Cartwright, Sr. ("Cartwright Sr.") initially brought three claims for: (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against Defendants CMI Card Services, LP, erroneously sued herein as Card Management, LP ("CMI"), Experian Information Solutions, Inc., sued herein as Experian Information Systems, Inc. ("Experian"), and Wilmington Savings Fund Society ("WSFS"); (2) violation of California's Identity Theft Law, California Civil Code § 1798.92 *et seq.*, against WSFS only; and (3) violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 *et seq.*, against Defendants CMI and WSFS.  On January 5, 2010, pursuant to the Parties' joint stipulation, we dismissed WSFS with prejudice from this action. (Dkt. No. 63).  Claim 2 was only brought against WSFS; therefore, it has already been dismissed with prejudice.  On March 11, 2010, we dismissed Claim 3 pursuant to Cartwright Sr.'s *ex parte* application. (Dkt. Nos. 77, 85).  We now clarify that the voluntary dismissal of Claim 3 was without prejudice.  Accordingly, only Claim 1 remains, and it is brought against the only two remaining Defendants, CMI and Experian.  Cartwright Sr. alleges that a derogatory was erroneously included in his credit report, even though his son, Harry A. Cartwright, Jr. ("Cartwright Jr."), who shares the same name (except for the suffix) and address, was allegedly responsible for the delinquency on the underlying account. (Joint Mot. 1-3; Compl. ¶¶ 11-28; J.A., Ex. 5 (CMI Pay Online Account Inquiry reflecting $350.48 debt)).  The gravamen of Cartwright Sr.'s complaint is that CMI and Experian (1) failed to conduct a reasonable investigation into the identity of the individual associated with the account to confirm or deny that the credit derogatory was properly applied to Cartwright Sr.'s credit report, and (2) continued to report the disputed identity information as verified and retained the derogatory information in violation of the FCRA. (Compl. ¶ 29; J.A., Ex. 16, Cartwright Sr. Decl. ¶ 16).

     This matter is now before us on CMI and Experian's Motions for Summary Judgment ("Motions").  We have considered the Parties' Joint Brief, the Joint Statement of Uncontroverted Facts, and the Joint Appendix, and deem these matters appropriate for resolution without oral argument. L.R. 7-15.  As the Parties are familiar with the facts in this case, we will repeat them only as necessary. Accordingly, we rule as follows.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

**I.     Legal Standard for Motions for Summary Judgment**

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, our "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

The moving party bears the initial responsibility to point to the absence of evidence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the non-moving party "bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex Corp.*, 477 U.S. at 322) (alteration in original). "[T]he moving party can meet its burden by pointing out the absence of evidence from the non-moving party," and it "need not disprove the other party's case." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted). Accordingly, "[t]he nonmoving party must come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citations omitted). However, "[i]f the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." FED. R. CIV. P. 56(e)(2); *see also Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The "opposing party may not rely merely on allegations or denials in its own pleading[.]" FED. R. CIV. P. 56(e)(2). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) ("The court must view all the evidence in the light most favorable to the nonmoving party.") (citations omitted).

"Only admissible evidence may be considered in deciding a motion for summary judgment." *Miller*, 454 F.3d at 988. Under Federal Rule of Civil Procedure 56(e)(1), "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." *See also Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). Conclusory and speculative affidavits that fail to set forth specific facts are insufficient to raise a genuine issue of material fact. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Absent a proper exception, hearsay statements are inadmissible. *See Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 875 n.1

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

(9th Cir. 2002). Furthermore, neither an unverified complaint nor unsworn statements made in the parties' briefs can be considered as evidence at this stage. *See Moran v. Selig*, 447 F.3d 748, 759 & n.16 (9th Cir. 2006) (noting that unverified complaint cannot be considered as evidence on motion for summary judgment); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda . . . are not evidence[.]").

**II.     Liability Under the Fair Credit Reporting Act**

Only CMI moves for summary judgment on the question of liability under the FCRA. A furnisher of credit information such as CMI can only be held liable under the FCRA if he receives notification of a customer's dispute from the credit reporting agency ("CRA"), here Experian. *Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008, 1014 (9th Cir. 2009), *amended by*, 584 F.3d 1147 (9th Cir. 2009). Under 15 U.S.C. § 1681s-2(a), a data furnisher is required to provide accurate information. However, there is no private right of action under that subsection. *See* 15 U.S.C. §§ 1681s-2(c), 1681s-2(d). "Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies." *Gorman*, 584 F.3d at 1154 (citing *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002) ("Congress limited the enforcement of the duties imposed by § 1681 s-2(a) to governmental bodies.")).

By contrast, Subsection (b) of Section 1681s-2, which requires furnishers to conduct reasonable investigations, does confer a private right of action, but it is only triggered when the CRA notifies the furnisher of a consumer dispute. 15 U.S.C. § 1681s-2 requires furnishers to report accurate information and to conduct investigations following notice of a dispute, report the results, and take certain actions depending on the outcome of the investigation. Notice adequate to trigger these obligations is defined in 15 U.S.C. § 1681i(a)(2), which provides that a CRA must give notice to the furnisher:

> (A) In general.—Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

> (B) Provision of other information.—The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer or the reseller after the [5-business-day period] and before the end of the [30-day period beginning on the date on which the CRA receives the notice of the dispute from the consumer or reseller].

The Ninth Circuit has stated that only a CRA's provision of notice triggers the furnisher's investigatory obligations imposed by Section 1681s-2(b). *Gorman*, 584 F.3d at 1154 ("These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

consumer does not trigger furnishers' duties under subsection (b)."); *Nelson*, 282 F.3d at 1059-60 (same); *Pineda v. GMAC Mortgage, LLC*, No. CV 08-5341 AHM, 2009 WL 1202885, at *4 (C.D. Cal. Apr. 30, 2009) (citation omitted) ("There is only a private right of action to enforce 15 U.S.C. § 1681s-2(b), and that right is triggered only when a furnisher of information receives notice of a dispute from a credit reporting agency that has itself received notice of a dispute from a consumer.").

Though the FCRA does not state this expressly, the furnisher's investigation pursuant to Section 1681s-2(b)(1)(A) must be reasonable. *Gorman*, 584 F.3d at 1156 ("It would make little sense to deem the CRA's investigation 'reasonable' if it consisted primarily of requesting a superficial, unreasonable investigation by the furnisher of the information."). The Fourth Circuit and Seventh Circuit have also determined that the FCRA requires the investigation to be reasonable, lest the requirements imposed upon furnishers be rendered toothless. *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430 n.2, 431 (4th Cir. 2004) (noting that a "superficial, unreasonable inquir[y]" would hardly satisfy Congress's objective "to give consumers a means to dispute—and, ultimately, correct—inaccurate information on their credit reports"). The reasonableness of an investigation "depends in large part on the allegations provided to the [furnisher] by the credit reporting agency." *Gorman*, 584 F.3d at 1160 (citation, quotation marks, and alterations omitted). The investigation must be "reasonable in light of what [the furnisher] learned about the nature of the dispute from the description in the CRA's notice of dispute." *Id*. at 1157.

In this case, CMI received two notices of a consumer dispute from Experian. These Automatic Consumer Dispute Verifications ("ACDVs") were sent by Experian to CMI on February 7, 2007 and June 14, 2007, respectively, following Cartwright Sr.'s submission of his disputes to Experian. (J.A., Exs. 60, 61). The February 7, 2007 ACDV (also, the "First ACDV") summarized the nature of the dispute as follows: "001-Not his/hers. Provide complete ID." (*Id*., Ex. 60). The First ACDV appears to have relayed Plaintiff's Social Security Number ("SSN") and Date of Birth ("DOB"). (*Id*.). CMI contacted Time Warner Cable ("TWC"), the credit originator, to determine if the identifying information contained in the First ACDV account (name, address, SSN, and DOB) matched the information TWC had in its file, and consulted its own records. (J.A., Ex. 20, Wilson Tr. at 140:2-14; *id*., Ex. 75, Wilson Decl. ¶ 6).[1] TWC communicated to CMI that the information was accurate. (*Id*., Ex. 20, Wilson Tr. at 140:2-21; *id*., Ex. 75, Wilson Decl. ¶ 7). No DOB or SSN was associated with the account; the original Comcast installation document for the TWC account appears to confirm that the original application did not request this information. (J.A., Ex. 1). That is why CMI only had the name, address, and the balance owed on file. (*Id*., Ex. 33).[2] CMI subsequently reported the information as verified to Experian,

---

[1] Defendant CMI has moved to seal the declaration and deposition testimony of Nelson Wilson, the Training Manager and Compliance Coordinator for CMI. Our paraphrasing of and citation to these documents in this section for the bare facts of CMI's communications with TWC does not implicate the concerns identified by counsel in their Application to Seal.

[2] CMI has also moved to seal this document which reflects CMI's Account Notes for this matter. However, we have only noted that the file did not contain certain information; we have not revealed the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

and on February 13, 2007, Experian reported the derogatory as verified. (*Id*., Ex. 56). On March 6, 2007, Cartwright Sr. sent a letter directly to CMI (which, as previously explained, did not trigger its duties under Section 1681s-2(b)), informing it that the TWC account belongs to his son, who shares the same name (except for the suffix) and address, and including the last four digits of his SSN. (*Id*., Ex. 23). CMI contacted TWC again, and TWC again confirmed the accuracy of the information. (*Id*., Ex. 78, Iwanski Decl. ¶ 24). On March 26, 2007, TWC wrote Cartwright Sr. to request a copy of his social security card and a picture ID. (*Id*., Ex. 48). Cartwright Sr. alleges that on April 4, 2007 Cartwright Jr. mailed a response to TWC's March 26, 2007 letter and enclosed copies of Cartwright Jr.'s driver's license, Cartwright Sr.'s passport, and Cartwright Sr.'s social security card. (*Id*., Ex. 49). CMI disputes the assertion that a letter was sent; it maintains that it never received any such letter, noting the letter was sent to a billing address, *i.e.*, a payment center P.O. Box. (Joint Mot. 33-36). Cartwright Sr. admits that neither he nor his son ever provided Experian with Cartwright Jr.'s SSN. (J.A., Ex. 41, Pltf.'s Responses to Experian's Requests for Admission, Request for Admission No. 9, at 3).

The June 14, 2007 ACDV (also, the "Second ACDV") more specifically described the nature of Cartwright Sr.'s dispute: "112-Claims inaccurate information. Did not provide specific dispute. Provide complete ID and verify account information. HAVE EVIDENCE THAT ACCOUNT IS NOT MINE. ACCOUNT BELONGS TO SON WITH SAME NAME AND ADDRESS." (J.A., Ex. 61). Cartwright Sr. again supplied his name, address, DOB, and SSN. (*Id*.). CMI consulted its files regarding the dispute to determine if the information it had was accurate, and on June 18, 2007, it again reported to Experian that the TWC account information was accurate. (*Id*., Ex. 75, Wilson Decl. ¶¶ 14-16); *see Gorman*, 584 F.3d at 1160 ("Congress could not have intended to place a burden on furnishers continually to reinvestigate a particular transaction, without any new information or other reason to doubt the result of an earlier investigation, every time the consumer disputes again the transaction with the CRA because the investigation was not resolved in its favor."). On June 19, 2007, Experian reported CMI's information as verified. (J.A., Ex. 58; *id*., Ex. 78, Iwanski Decl. ¶ 29). On September 7, 2008, Cartwright Jr. again sent a dispute letter directly to CMI. (J.A., Ex. 51), and CMI again confirmed the validity of the account. (*Id*., Ex. 78, Iwanski Decl. ¶ 28). On October 2, 2008, CMI sent a letter to Cartwright Sr. telling him to contact TWC if he needed any further assistance. (J.A., Ex. 52). Cartwright Sr. argues that there is a triable issue of material fact as to whether CMI's investigations were reasonable, since they purportedly could only verify the name and address in the absence of any SSN or DOB associated with the underlying TWC account.

In determining whether a credit furnisher has violated Section 1681s-2(b), we look not just to the reasonableness of the investigation, but also to the mandatory reporting of the outcome of that investigation back to the CRA. *See Gorman*, 584 F.3d at 1162. Section 1681s-2(b)(1)(D) requires that "if the investigation finds that the information is incomplete or inaccurate," the furnisher must "report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis." Section 1681s-2(b)(1)(E)

---

specific details of the document. Therefore, the arguments contained in the Application to Seal are not implicated by this citation.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

provides that "if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation," then the furnisher of credit information must "(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." A furnisher is not in compliance with the FCRA if it conducts a reasonable investigation and learns that a particular piece of disputed information cannot be verified, but nonetheless reports contrary results to the CRA.

CMI argues that the Seventh Circuit's decision in *Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir. 2005), counsels in favor of entering summary judgment in its favor. Like the instant case, *Westra* also involved two ACDVs. The first informed the furnisher "that [the plaintiff] was disputing the charge on the basis that the account did not belong to him," but "did not provide any information about possible fraud or identity theft or include any of the documentation provided to [the CRA] by [the plaintiff]." *Id*. at 827. The second did "indicat[e] that the dispute was whether the account was fraudulent" and "[b]ased on this new information, [the furnisher] ordered a deletion of the fraudulent account." *Id*. at 826. The question was whether the investigation following the first ACDV was reasonable, given the dispute summary. The court found the prior investigation reasonable as a matter of law, because the furnisher had verified the plaintiff's name, address, and DOB, and had not been notified that the dispute entailed an allegation of fraud:

> Credit Control verified Westra's name, address, *and date of birth* and sent the CDV back to Trans Union. Had Trans Union given Credit Control notice that the nature of the dispute concerned fraud, then perhaps a more thorough investigation would have been warranted. Given the facts of this case, however, Credit Control's verification of Westra's information was a reasonable procedure.

*Id*. at 827 (emphasis added). *Westra* is distinguishable because, in that case, the furnisher verified the plaintiff's DOB. Though the plaintiff's SSN was not verified, the DOB was a sufficiently unique data point that the court could comfortably find that the plaintiff's identity had been reasonably verified. Indeed, the only situation the investigation did not exclude was twins with the same name (a decidedly unusual notion), same address (a fairly typical occurrence), and different SSNs (which is mandated by law). Here, unlike in *Westra*, CMI was unable to verify DOB and SSN information; it relied solely on name and address when it reported the account as accurate. Thus, *Westra* does not lend credence to the proposition that confirming name and address alone is sufficient to find a procedure for identity verification reasonable as a matter of law. Furthermore, we do not read *Westra* as rejecting the notion that a furnisher may be obligated to contact a consumer directly under certain circumstances. 409 F.3d at 827. Rather, the court appears to have only said direct contact was unnecessary where the facts already demonstrated the reasonableness of the investigation.

The Fourth Circuit's decision in *Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004), supports denying CMI's motion for summary judgment. In *Johnson*, two CRAs, Experian and Trans Union, sent the credit furnisher and defendant, MBNA, an ACDV which "specifically indicated that [the plaintiff] was disputing that she was a co-obligor on the account." *Id*. at 429 (noting ACDV

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

explained that "CONSUMER STATES BELONGS TO HUSBAND ONLY" and "WAS NEVER A SIGNER ON ACCOUNT. WAS AN AUTHORIZED USER."). The court reviewed whether a reasonable jury could have concluded that the investigation was unreasonable. The defendant furnisher was "notified of the specific nature of [the plaintiff's] dispute—namely, her assertion that she was not a co-obligor on the account." *Id*. at 431. The defendant's investigation was "limited to (1) confirming that the name and address listed on the ACDVs were the same as the name and address contained in the CIS [Customer Information System], and (2) noting that the CIS contained a code indicating that Johnson was the sole responsible party on the account." *Id*. Defendant's agents "testified that, in investigating consumer disputes generally, they do not look beyond the information contained in the CIS and never consult underlying documents such as account applications." *Id*. On this basis, the court held that "a jury could reasonably conclude that MBNA acted unreasonably in failing to verify the accuracy of the information contained in the CIS." *Id*.

In relevant part, the Fourth Circuit also added that even if it were impossible for MBNA to have verified that the wife listed on the account was in fact a co-obligor, and not merely "an authorized user," *id*. at 428-29, a jury could still reasonably find that it was unreasonable under the FCRA for the furnisher to communicate to the CRAs that it had been able to verify the plaintiff was a co-obligor. *Id*. at 432. The court wrote:

> MBNA argues that Johnson failed to establish that MBNA's allegedly inadequate investigation was the proximate cause of her damages because there were no other records MBNA could have examined that would have changed the results of its investigation. In particular, MBNA relies on testimony that, pursuant to its five-year document retention policy, the original account application was no longer in MBNA's possession. Even accepting this testimony, however, a jury could reasonably conclude that if the MBNA agents had investigated the matter further and determined that MBNA no longer had the application, *they could have at least informed the credit reporting agencies that MBNA could not conclusively verify that Johnson was a co-obligor*.

*Id*. (citing 15 U.S.C.A. § 1681i(a)(5)(A) (upon reinvestigation where an item is found "to be inaccurate or incomplete or cannot be verified," requiring CRA to "promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation" and "promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer")) (emphasis added). The CRA's duty to delete the information is mirrored in the furnisher's duties under Sections 1681s-2(b)(1)(D)-(E). In our case, even if the attempt to contact Plaintiff through TWC makes CMI's efforts more reasonable, CMI is still potentially liable for communicating to Experian that it had verified Cartwright Sr.'s "completed ID" when they had been unable to do so.

Therefore, summary judgment is inappropriate with respect to both ACDVs in this case. Each ACDV requested verification of "complete ID," making partial verification of name and address only arguably unreasonable, and the Second ACDV clearly identified the unique mixed identity situation at

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

issue in this case, such that it was arguably unreasonable to merely rely on the results of the prior investigation. In numerous cases, courts have entered summary judgment where a furnisher had no reason to investigate an undisclosed allegation of fraud (*e.g.*, forgery or identity theft), and satisfied their obligation to "[p]rovide complete ID" by simply verifying "name, address, previous address, social security number and birth date." *See, e.g.*, *Malm v. Household Bank*, *(SB), N.A.*, No. Civ. 03-4340ADMAJB, 2004 WL 1559370, at *4-5 (D. Minn. July 7, 2004). Here, with respect to the First ACDV, CMI did not verify all the requisite data points, and by the time the Second ACDV was sent, it was impossible for CMI to claim ignorance of the specific nature of Cartwright Sr.'s dispute.

As the Seventh Circuit noted in *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662 (7th Cir. 2001), "[t]he determination of the 'reasonableness' of the defendant's procedures . . . is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is *beyond question*." *Id*. at 664 (emphasis added). The reasonableness of the investigation and subsequent reporting in this case is not so clear-cut. The Ninth Circuit has stated that "summary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the reasonable man standard is thought ordinarily to preclude summary judgment." *In re Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450 n.12 (1976)) (internal quotation marks omitted); *see also Howard v. Wells Fargo Fin. Acceptance*, No. C-07-5881 EDL, 2008 WL 5115049, at *3 (N.D. Cal. Dec. 4, 2008) (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)) ("The question of reasonableness is generally one for the jury."). Summary judgment "is appropriate when only one conclusion about the conduct's reasonableness is possible." *Gorman*, 584 F.3d at 1157 (citation and quotation marks omitted). We do not think this is such a case.

Finally, we see no basis in the law for concluding CMI's attempt to contact Cartwright Sr. through TWC immunizes it from liability under the FCRA. This detail may, of course, assist CMI at trial, but it does not compel the entry of summary judgment in its favor. A jury could reasonably find that, even if the TWC account did not contain SSN or DOB information for comparison, it was unreasonable not to postpone reporting to Experian that it had verified Cartwright Sr.'s complete identity and his responsibility for the TWC account. Alternatively, a jury might reasonably conclude that CMI did everything it possibly could to verify the information in the TWC account, even contacting the original creditor, which in turn attempted to reach Cartwright Sr. However, we cannot decide this question as a matter of law. CMI has not cited and we have not found any law to the contrary.

Accordingly, CMI's Motion for Summary Judgment as to the question of liability is hereby **DENIED**.

**III. Damages**

Both CMI and Experian move for summary judgment as to whether Cartwright Sr. has proffered sufficient evidence to create a triable issue of fact as to the damages sought for any FCRA violation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

Under the FCRA, a plaintiff may recover actual damages under 15 U.S.C. § 1681o(a), and punitive damages for willful noncompliance under Section 1681n(a).

    *A.*    *Actual Damages*

        1.    **"Out-of-Pocket" Damages**

      First, "[t]he term 'actual damages' may include out-of-pocket expenses for attorney's fees incurred by a plaintiff prior to litigation of his FCRA claims." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995). "The rationale behind this rule is that a consumer should not have to retain an attorney in order to force compliance with the statute." *Id.* In *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074 (D. Or. 2007), the court agreed that "out-of-pocket costs constitute cognizable economic damages for FCRA purposes." *Id.* at 1085. Cartwright Sr. states that he paid $17 per month to Pre-Paid Legal Services, Inc. to handle his dispute letter. (*See* J.A., Ex. 80, Pltf.'s Authenticating Decl. ¶ 11 ("I have been a member of Pre-Paid Legal Services, Inc. from 2007 to the present time. My payments have remained $17.00 per month for that service, and that is the service I used to have the letter written by Parker Stanbury LLP to Experian on August 13, 2008 on my behalf."); *id.*, Ex. 50 (Letter from Parker Stanbury LLP to Experian, Trans Union, and Equifax, Aug. 13, 2008)). Cartwright Sr.'s declaration is admissible evidence of out-of-pocket expenses, and therefore, we hereby **DENY** the Motions as to this subcategory of actual damages with respect to both CMI and Experian.

        2.    **Denial of Credit (Economic Damages)**

      "Actual damages recoverable under 15 USC §§ 1681n and 1681o include [1] denial of credit, [2] loss of property, [3] damages for emotional distress and humiliation." *Rothery v. Trans Union, LLC*, No. CV-04-312-ST, 2006 WL 1720498, at *9 (D. Or. Apr. 6, 2006) (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

      Cartwright Sr. applied for credit subsequent to the reporting of the TWC derogatory in January 2007. However, each of these three credit applications was denied for reasons other than a lowered credit score or was simply abandoned before a final determination could be reached by the creditor. First, in June 7, 2007, Bank of America ("BOA") sent Cartwright Sr. a letter requesting that he contact them. (J.A., Ex. 45). Plaintiff now concedes this letter did not constitute a denial of his request and that he failed to follow up with Bank of America. (Cartwright Sr. Tr. at 129:14-130:9). At the time, he had simply assumed that his application had been denied. (*Id.*). Not only is this an erroneous reading of the letter, but Cartwright Sr. has not, in the alternative, demonstrated that pursuing the application was futile, *i.e.*, that denial was certain if he had attempted to apply.

      Second, in January 2009, IndyMac Federal Bank ("IndyMac") mailed Cartwright Sr. a notice informing him that his application for loan modification was denied due to "[i]nsufficient income for total obligations." (J.A., Ex. 38). The notice made no mention of Cartwright Sr.'s credit report, and therefore, it cannot serve as a basis for recovering actual damages here. Therefore, with respect to the

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

IndyMac and Bank of America applications, Cartwright Sr. has failed to proffer any evidence demonstrating or even suggesting that they might have been denied based on his credit report. Accordingly, we **GRANT** the Motions with respect to the BOA and IndyMac applications.

Third, on July 30, 2008, Wescom Credit Union denied Cartwright Sr. and his wife's application for a personal loan in the amount of $10,000. (*Id*., Exs. 46-47). The letter stated: "The principal reason(s) we are unable to approve your request are: Excessive Obligations." (*Id*., Ex. 47). This statement is slightly ambiguous, because the letter used the word "principal," not "only," reason. If a lender denies a loan application based upon a credit score in whole or in part, then the FCRA requires it to provide the consumer with the following in the declination letter, orally, or electronically: (1) notice of the denial; (2) the name, address, and telephone number of the CRA that provided the report; (3) "a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken"; (4) notice of the consumer's right to obtain a free copy of the consumer report under 15 U.S.C. § 1681j; and (5) notice of the consumer's right to dispute any information in the credit report under 15 U.S.C. § 1681i. 15 U.S.C. § 1681m(a). Wescom made these requisite disclosures in the denial letter. (J.A., Ex. 47). Notwithstanding Wescom's statement that the primary reason for the denial was "excessive obligations," the letter as a whole suggests it did rely in part on the TWC derogatory in the credit report and/or overall credit score. Therefore, there is a triable issue of fact with respect to the Wescom denial letter, and we **DENY** the Motions with respect to the Wescom application.

### 3. "Lost Opportunity" or "Lost Credit Expectancy" Damages

Cartwright Sr. next argues that he may recover for the loss of credit expectancy. Essentially, he argues that he was deterred from even applying for credit following the reporting of the credit derogatory associated with the TWC account, and that this is a basis for recovery even in the absence of any actual denial of credit. For this proposition, Cartwright Sr. cites the Ninth Circuit's opinion in *Guimond*, but that decision does not stand for the unfettered proposition Cartwright Sr. advances. Indeed, we know of no case awarding damages in the absence of any credit application or denial and any emotional distress, *i.e.*, in the context of a claim based on a plaintiff's subjective belief that applying for credit would be futile.

In *Guimond*, the Ninth Circuit acknowledged that counsel argued that a plaintiff who is deterred from even applying for credit should be permitted to recover on a theory of "lost opportunities," 45 F.3d at 1332 & n.2, in addition to seeking emotional distress damages. *Id*. at 1332 n.2 ("Since Guimond has a right to apply for credit, her counsel argued she suffered damages as a result of [the defendant's] conduct because she was deterred from exercising that right."). The court did not adopt or approve of this theory. Rather, the court narrowly held that "a denial of credit" is not "a prerequisite to recovery under the FCRA." *Id*. at 1333. Rather than recognize the concept of "credit expectancy," the court appears to have held that a denial of credit was not required to show actual injury, namely emotional distress damages. Complete deterrence, however, has not been expressly recognized as a potential basis for recovery. Various courts have so held. *See, e.g., Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

1253, 1265 (S.D. Fla. 2009) ("Plaintiff suggests that he would have applied for credit after March 9, 2006, but decided not to do so out of a concern that a rejected credit application would further harm his credit rating. This measure of damages is too speculative to withstand summary judgment."); *Garrett v. Trans Union, L.L.C.*, No. 2:04-CV-00582, 2006 WL 2850499, at *12 (S.D. Ohio Sept. 29, 2006) (rejecting plaintiff's attempts to recover an award for "lost opportunity damages" as a matter of law where plaintiff was not actually denied credit but speculated that he would have been unable to obtain credit had he sought it). In *Casella*, the Second Circuit affirmed summary judgment in favor of the defendant on the ground that the plaintiff's "lost opportunity damages . . . were too speculative," despite evidence indicating that the plaintiff was "actively seeking to purchase a home" but "refrained from making any credit applications in order not to tarnish further his credit history." 56 F.3d at 475. This case law is not at odds with *Guimond* though. As previously noted, district courts in this circuit have by and large construed *Guimond* to only permit the recovery of "denial of credit, loss of property, [and] damages for emotional distress and humiliation." *Rothery*, 2006 WL 1720498, at *9 (citing *Guimond*, 45 F.3d at 1333); *see also Valentine v. First Advantage Saferent Inc.*, No. EDCV 08-142-VAP (OPx), 2009 WL 3841967, at *1 (C.D. Cal. 2009) (citing *Guimond*, 45 F.3d at 1333) ("The term 'actual damages' has been interpreted to include recovery for emotional distress and humiliation.").

"Lost opportunity" or "lost credit expectancy" damages are thus wholly speculative on this record; Cartwright Sr. has not pointed to any authorities to substantiate this request, nor introduced any evidence to demonstrate that there is a triable issue of fact. Cartwright Sr. claims that he was deterred from applying to refinance in 2007, yet he subsequently applied to refinance his loan with IndyMac in 2008 and was denied in 2009. (J.A., Ex. 42, Response No. 22; *id.*, Ex. 43, Response No. 9; *id.*, Ex. 38). Even if complete deterrence from applying for credit were a cognizable form of actual damages (it is not), Cartwright Sr. was not in fact deterred from applying for credit as a result of the derogatory information in his credit report. There is simply no deterrence in this case, upon which to base this novel theory. Were we to endorse Cartwright Sr.'s theory, the existence of actual damages would hinge on whether an FCRA plaintiff reasonably believed that no credit would be forthcoming if he applied. This sort of speculation cannot serve to create a triable issue of material fact.

The speculative nature of this request is further revealed by Cartwright Sr.'s expert Thomas Tarter's ("Tarter") estimation that this form of damages is worth more than $20,000 and his concession that "[t]his represents an estimated range of available credit. Since it is not possible to quantify this element of damages. Consequently, the amount represented . . . does not represent quantified damages." (J.A., Ex. 10, Tarter's Preliminary Expert Report, at 18 n.28). For "lost opportunity" damages, while the fact of damages cannot be based on speculation, "'[t]he risk of uncertainty as to [the] amount of damages is cast on the wrongdoer and it is the duty of the fact finder to determine the amount of the damages as best he can from all the evidence in the case.'" *In re DaimlerChrysler AG Secs. Litig.*, 294 F. Supp. 2d 616, 627 (D. Del. 2003); *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 220 (3d Cir. 2002) (quoting *Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 781-82 (3d Cir. 1976)). Any estimate untethered to some reliable methodology is inadmissible evidence under Federal Rule of Evidence 702. Tarter has not set forth a specific figure for this requested form of damages, nor explained how the $20,000 minimum was derived, so we may not consider it in ruling on these Motions.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

Accordingly, we **GRANT** CMI and Experian's Motions with respect to "lost opportunity" or "loss of credit expectancy" damages.

### 4. "Cost-of-Credit" Damages

Lastly, Cartwright Sr. appears to argue, based on Tarter's testimony, that he was ultimately forced to pay higher interest rates for credit as a result of the TWC derogatory. Tarter stated in his Preliminary Expert Report that Cartwright Sr.'s "monthly payments increased $371.70/per month as compared to what he was originally quoted on March 10, 2006 by Susannah Mitchell in her email due to the climb in his credit scores." (J.A., Ex. 10, at 13). He further represents that he "tested the interest rate quoted on March 10, 2006 and confirmed that the rate quoted was consistent with the average interest rates in effect in March and April 2006 . . . as reported by HSN Associates. The annual differential results in [Cartwright Sr.] paying $4,352.40 more per year than the market rate Ms. Mitchell originally quoted." (*Id*. at 13-14). The email sent by Ms. Mitchell, presumably an Ownit Mortgage broker, lists a credit score of "737" and discloses interest rates of 6.625 and 6.25 percent. (J.A., Ex. 26). Apparently Cartwright Sr. was given a higher interest rate than the one quoted. It is on this differential that Tarter bases his estimate of Cartwright Sr.'s cost-of-credit damages, approximately $17,000 per year in cost-of-credit damages (approximately $44,000 for 10 years). (J.A., Ex. 10, Tarter Preliminary Expert Report, at 17-18 ¶ 36 & n.27). This represents the sum of $17,000 mortgage debt and $2,000 in increased credit card payments per year. (*Id*. at 18 n.27). Tarter writes:

> The increased cost of credit for Mr. Cartwright's mortgage was $4,353/yr. Based on the circumstances of this case[ ], Mr. Cartwright's age, sources of income, I calculated the loss for a range between 4 to 10 years. I also took into consideration that credit underwriting is more stringent today than when Mr. Cartwright took out his current mortgage. It is my opinion that he would not qualify today for a mortgage. This equates to approximately $17,000 - $44,000 for mortgage debt. Further, increased credit card payments are estimated to range between $2,000 - $3,000/yr (I used $2,000 to be conservative[)]. Combined mortgage and credit card payments are estimated to range approximately $19,000 for 1 year and $64,000 for 10 years. I did not make a discounted present value computation.

(*Id*.).

However, evidentiary support for those calculations is utterly lacking. The most glaring absence is any evidence in the record as to what loan interest rates Cartwright Sr. was ultimately given, if not the ones quoted to him by Ms. Mitchell. More importantly, there is no evidence to demonstrate that the undisclosed and purportedly higher interest rates were offered to Cartwright Sr. *after* the TWC derogatory was first reported in January 2007. Absent such evidence, Plaintiff has failed to raise a triable issue on causation with respect to the TWC derogatory, and no damages may be recovered for any increase in the cost of credit prior to its initial reporting. Tarter concedes that the mortgage-related portion of his proposed cost-of-credit damages is attributable to a 2006 mortgage, not any event or

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

transaction subsequent to the January 2007 reporting of the TWC derogatory. (Tarter Tr. at 147:10-14). Furthermore, to the extent Tarter is arguing in the alternative that Cartwright Sr. was denied a refinance loan with a lower interest rate, we reject this contention for two reasons: (1) Cartwright Sr. has not introduced any evidence that any refinance loan application following January 2007 was denied due to his credit report; and (2) loss of credit expectancy resting solely on deterrence from applying for credit is not a recognized form of actual damages under the FCRA.

In addition, as noted in the above excerpt from the Preliminary Expert Report (J.A., Ex. 10, at 18 n.27), Tarter also asserts that Cartwright Sr.'s credit card payments increased, giving rise to $2,000 in damages. Again, there is no evidence that this followed and was caused by the initial reporting of the TWC derogatory in January 2007. More importantly, Tarter conceded that he did not review any documents to substantiate this claim and based his assessment *solely* on conversations with Cartwright Sr., *i.e.*, on inadmissible hearsay. (Tarter Tr. at 159:19-160:9 ("Q. What did you base that on? A. My conversation with Mr. – and interview with Mr. Cartwright, Sr.")). Tarter further admitted that he did not even ask Cartwright Sr. for any documents that substantiated his representations as to the increase in credit card payments, such as monthly statements. (*Id*. at 160:22-161:4). He also could not say how many credit cards were at issue. (*Id*. at 160:16-25).

Accordingly, we conclude that Tarter's assessment of and arguments in support of "cost-of-credit" damages are purely speculative, unsupported by admissible evidence, and not derived by way of a reliable methodology as required by Federal Rule of Evidence 702. There is simply no admissible evidence in the record to establish that Cartwright Sr. paid more on his mortgage loan and credit card(s) than he would have but for the TWC derogatory, which was first reported in January 2007. At any rate, Tarter has only presented speculation and has not demonstrated how these results were calculated; a step-by-step methodology is simply not disclosed. *See Rambarran*, 609 F. Supp. 2d at 1265-66 (finding no evidence that plaintiff was required to pay high interest rates on his credit cards or any other credit facilities); *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005) ("Plaintiff has not provided sufficient evidence in support of his claim" that he was forced to pay "a higher interest rate on his loan" as a consequence of the defendant-bank's alleged breach of the FCRA, where the evidence suggested that plaintiff's "interest rate was higher because of interest rate market fluctuation and not his credit report."). Absent admissible evidence that Cartwright Sr. obtained less favorable credit terms or that such terms were unfavorably adjusted after the credit derogatory was reported, Cartwright Sr. has not raised any triable issue of any rate increase, let alone a causal relationship between any such purported loss and CMI and Experian's conduct.

Therefore, we hereby **GRANT** CMI and Experian's Motions as to the request for "cost-of-credit" damages.

      **5.**      **Emotional Distress Damages (Non-Economic Damages)**

The Ninth Circuit has interpreted "actual damages" under 15 U.S.C. § 1681o(a)(1) of the FCRA to include "recovery for emotional distress and humiliation." *Guimond*, 45 F.3d at 1333 (finding a

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

denial of credit unnecessary to award plaintiff emotional distress damages). The evidentiary threshold for establishing a triable issue of fact with respect to emotional distress damages has been discussed by district courts in this circuit, if not by the Ninth Circuit specifically. In *Nelson v. Equifax Information Services, LLC*, 522 F. Supp. 2d 1222 (C.D. Cal. 2007), the court stated that "[b]ased on Ninth Circuit precedent, the Court finds that [the plaintiff's] testimony alone can sufficiently establish emotional distress damages, such that a jury could find in her favor on that issue." *Id*. at 1235. Another court has noted: "The Ninth Circuit has not addressed the type of evidence necessary to support an award of emotional distress damages under the FCRA, but has stated in other contexts that 'while objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in the Ninth Circuit, or the Supreme Court.'" *Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092, 1101 (D. Ariz. 2003) (quoting *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) (holding in a discrimination action that the plaintiff's "testimony alone is enough to substantiate the jury's award of emotional distress damages") (alterations and citations omitted)). The *Acton* court also cited *Johnson v. Hale*, 13 F.3d 1351 (9th Cir. 1994), which recognized that "compensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms." *Id*. at 1352-53. Similarly, in *Rothery*, the court characterized the applicable evidentiary burden as "low" and concluded that a plaintiff's "own subjective account and the declaration of her mother . . . present[ing] evidence of emotional distress, humiliation, damage to reputation and loss of opportunities as a result of the reporting of false information" were sufficient for a request for emotional distress damages to survive summary judgment. 2006 WL 1720498, at *10.

Here, Cartwright Sr. has testified to his emotional distress, and that alone is sufficient to create a triable issue of fact. He has declared the following:

> Despite my protests and despite easily verifiable information, CMI and Experian continued reporting the erroneous information on my credit report for almost two and a half years. This caused me much emotional pain, embarrassment, humiliation and frustration, and continued to hurt my efforts at eventually obtaining refinancing of my home loan at more favorable rates . . . .

(J.A., Ex. 16 ,Cartwright Sr. Decl. ¶ 16). Additionally, he declares that he "suffered from migraine headaches, sleeplessness, a feeling of extreme frustration and helplessness at not being able to resolve this matter, embarrassment, humiliation, emotional upset and difficulty in keeping up [his] spirits and sociability." (*Id*. ¶ 20).

CMI and Experian contend his family members' deposition testimony reveals that the TWC derogatory could not have caused Cartwright Sr.'s emotional distress, since it was not reported until January 2007. (*Id*. ¶ 19). As support, they selectively cite portions of the deposition transcripts where the witnesses attribute Cartwright Sr.'s distress to the denial of a mortgage loan in 2006. This arguably contrary testimony of Beverly Cartwright, Cartwright Sr.'s wife ("Mrs. Cartwright"), and Cartwright Jr. is largely inadmissible hearsay. More importantly, even if we could consider all of their statements as

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

evidence, they would not establish as a matter of law that Cartwright Sr.'s distress was not at least in part attributable to the TWC credit derogatory.

      First, Mrs. Cartwright testified that Cartwright Sr.'s emotional distress was related to the home loan denial in 2006, but she has no personal knowledge of the cause of his distress; it must have been communicated to her by her husband and is therefore inadmissible. (Mrs. Cartwright Tr. at 64:15-65:4). Second, CMI and Experian argue that Tarter attributed his damage calculations to the 2006 home loan denial. (Tarter Tr. at 147:10-14). Yet, Tarter also has no personal knowledge of the causes of Cartwright Sr.'s alleged emotional distress, so any testimony he has given as to emotional distress damages is likewise inadmissible. Third, Cartwright Jr.'s testimony that his father's "manifestations" of distress "began around the time that he found out that his really good credit score was tarnished" is admissible to the extent it is based on his personal observation. (Cartwright Jr. Tr. at 101:15-19). But other statements he makes appear largely to rest on inadmissible hearsay communicating emotions such as "humiliation" and "frustration." Moreover, other statements are conclusory without any description of the actual observed facts of Cartwright Sr.'s emotions. (*See id.* at 106:11-13 ("[M]y understanding is that CMI is one of the people that has stressed him out, as far as, like, dragging his credit down."); J.A., Ex. 18, Cartwright Jr. Decl. ¶ 10 ("My father complained of migraines which he had quite often during this period of time, and he experienced a lot of sleeplessness. He seemed to be going through a period of extreme frustration and helplessness . . . . Because my father was so stressed out by the CMI situation, it in turn was very stressful for the whole household, including my mother, my wife and myself. . . . A feeling of humiliation was also manifest.")). Yet, even if there is no corroborating testimony whatsoever, Cartwright Sr.'s testimony on its own is sufficient to create a triable issue of fact as to whether he did in fact suffer emotional distress between 2007 and 2009 as a consequence of the continued reporting of the TWC credit derogatory. As we must construe the evidence in the light most favorable to Cartwright Sr. on these motions for summary judgment, we hereby **DENY** CMI and Experian's Motions as to this form of actual damages.

      **B.**    *Punitive Damages*

      Cartwright Sr. also seeks punitive damages against both CMI and Experian. 15 U.S.C. § 1681n(a) provides:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
>
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

The Supreme Court has construed "willfully" to encompass both knowing and reckless violations of the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). "While 'the term recklessness is not self-defining,' the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*. at 68 (citation omitted). "Willfulness under the FCRA is generally a question of fact for the jury." *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (collecting cases; citations omitted). "To determine that willfulness does not present a jury question in this case, the court would have to conclude that no reasonable jury could find that [the defendant's] conduct created a risk of violation substantially greater than that which is necessary to make its conduct negligent." *Id*. (citing *Safeco*, 551 U.S. at 69) (internal quotation marks and alterations omitted).

      Here, we must draw a distinction between CMI and Experian. With respect to CMI, there is evidence in the record tending to show CMI reported Cartwright Sr.'s identifying information as accurate and attached to the TWC account knowing that DOB and SSN information had not been verified. The first ACDV asked for verification of "complete ID," and the second ACDV unambiguously informed CMI of the mixed identity situation. Therefore, based on the evidence previously addressed in Section II, we conclude that there is a triable issue of fact as to whether CMI acted at least recklessly in investigating Cartwright Sr.'s dispute. The Motion is hereby **DENIED** with respect to Cartwright Sr.'s request for punitive damages against CMI.

      By contrast, there is no evidence that Experian was aware that CMI had not been able to verify each item of personal identifying information in the ACDVs. Experian is being sued under 15 U.S.C. § 1681e(b), which requires credit reporting agencies such as Experian to maintain "reasonable" procedures to ensure "maximum possible accuracy" of consumer credit reports, as well as 15 U.S.C. § 1681i(a), which requires a CRA to conduct a reasonable reinvestigation. With respect to Section 1681e(b), punitive damages may be recovered against a CRA if it "know[s] that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3d Cir. 1997). There is no evidence in the record to suggest that Experian's policy for investigating disputes was knowingly or even recklessly in violation of the FCRA. The real issue is whether Experian at least recklessly breached its statutory duty to reinvestigate. A CRA is only required to "verify the accuracy of its initial source of information" "in certain circumstances" to fulfill its obligation under 15 U.S.C. § 1681i(a). *Id*. at 225 (citation and quotation marks omitted). The Third Circuit, for instance, has held that "[w]hether the credit reporting agency has a duty to go beyond the original source" turns on two factors: (1) "whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

unreliable"; and (2) "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." *Id*. (citations and quotation marks omitted).

Here, Plaintiff has presented no evidence to suggest that Experian had any reason to suspect that CMI was unreliable or had any reason to doubt CMI's representation that it had verified Cartwright Sr.'s "complete ID" and confirmed he was associated with the TWC account.[3] There is no evidence to indicate Experian knew or should have known that it was running a risk "substantially greater than that which is necessary to make its conduct negligent," *Edwards*, 527 F. Supp. 2d at 1210, by relying on the results of CMI's investigations as reported to it. No complete and accurate SSN or DOB information for Cartwright Jr. had been provided directly to Experian. (J.A., Ex. 78, Iwanski Decl. ¶¶ 23, 27, 30; *id*., Ex. 41, Pltf.'s Responses to Experian's Requests for Admission, Request for Admission No. 9, at 3 (admitting Cartwright Jr.'s accurate SSN was never provided to Experian)). In fact, the only documentation provided to Experian to assist its efforts in resolving the mixed identity situation included what was purported to be the last four digits of Cartwright Jr.'s SSN: 5757. (J.A., Ex. 62, Letter dated Aug. 13, 2008). Experian did not ignore this information; it tried to link the partial SSN to any account in Cartwright Sr.'s credit report. (J.A., Ex. 78, Iwanski Decl. ¶ 32). But when it could not be matched and thus could not serve to eliminate any derogatory information in the credit report, the partial SSN was deleted from Cartwright Sr.'s file. (*Id*.).[4] Experian did not willfully ignore the partial SSN; its employees reviewed Cartwright Sr.'s credit file to see if they could find any erroneous attributions. Ultimately, we see no evidence in the record that shows Experian knew or should have known that CMI and TWC lacked SSN and DOB information for Cartwright Sr., precluding any verification of those details. Indeed, Experian had no access to CMI or TWC's records. (*Id*. ¶ 18). Simply because Cartwright Sr. continued to dispute the TWC account belonged to him does not mean Experian should have concluded the account was wrongfully attributed to him or that the furnisher was not completely verifying the disputed information.

In light of the above, Experian did not consciously disregard a known risk when it relied on CMI's representations that it had verified the account as accurate. At most, its reliance on CMI's representations was negligent. We hereby **DENY** CMI's Motion for Summary Judgment with respect to the availability of punitive damages for a willful violation of the FCRA under Section 1681n, and **GRANT** Experian's Motion for Summary Judgment with respect to the same.

**IV.   Conclusion**

---

[3] We need not even consider factor (2), because it is obvious from the admissible evidence that Experian had not been "alerted" to any reason to doubt the furnisher's information.

[4] As it turns out, Cartwright Jr. testified that the last four digits of his SSN are in fact 7159, so the partial SSN provided to Experian was inaccurate. (Cartwright Jr. Tr. at 176:18-19). Cartwright Sr. himself admitted that he never provided Experian with Cartwright Jr.'s accurate SSN. (J.A., Ex. 41, Request for Admission No. 9).

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-427-GHK (SSx) | Date | August 26, 2010 |
|---|---|---|---|
| Title | *Harry Cartwright, Sr. v. Experian Information Systems, et al.* | | |

      In sum, we hereby **DENY** CMI's Motion for Summary Judgment on the question of FCRA liability.  We also **DENY in part** and **GRANT in part** CMI and Experian's Motions for Summary Judgment with respect to damages, as set forth herein.  The Parties **SHALL** conduct a further settlement conference before Judge Segal in light of this ruling.  **Within fourteen (14) days hereof**, counsel **SHALL** file a Joint Status Report setting forth the date cleared with Judge Segal's clerk for such settlement conference.

      **IT IS SO ORDERED.**

|  |  | -- | : | -- |
|---|---|---|---|---|
|  | Initials of Deputy Clerk | | Bea | |